570 A.2d 1364

**Dorothy Mae BUKICS, Appellant,**

v.

**Stephen John BUKICS, Sr. and County of Lehigh, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Feb. 20, 1990.

Jon M. Saltzman, with him, Yale F. Edeiken, Allentown, for appellant.

Maryesther S. Merlo, for appellees.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

■ Dorothy Mae Bukics (Appellant) appeals from an order of the Court of Common Pleas of Lehigh County (trial court), which vacated a support order directing Stephen John Bukics, Sr. (Mr. Bukics) to pay Appellant, his wife, $700.00 per month. The order was vacated following the filing of a petition for modification of support order by the County of Lehigh (County) on behalf of the Cedarbrook Nursing Home (Cedarbrook) where Mr. Bukics resides.[1]

Cedarbrook is a health care facility for the indigent, operated and maintained by the County. When Mr. Bukics was admitted to Cedarbrook on October 31, 1985, Mr. Bukics, Appellant, and Cedarbrook agreed that his pension check would be used to partially reimburse Cedarbrook for his medical expenses and Appellant would receive his social security check, which was her sole means of support at that time.[2] The Social Security Administration mailed Mr. Bukics' social security checks directly to Appellant, and Mr. Bukics' former employer mailed his pension checks directly to Cedarbrook.

Appellant became eligible for her own social security benefits in September, 1987. Prior to that date, Cedarbrook applied to the Social Security Administration to become the representative payee for Mr. Bukics' social security benefits and received his social security check for September, 1987.

1. While we have serious doubts concerning our jurisdiction, in the interest of judicial economy we will address the merits of the case. Pa.R.A.P. 741 and *Austin v. Borough of Ligonier,* 122 Pa.Commonwealth Ct. 161, 162, 551 A.2d 403, 404 n. 1 (1988).

2. Mr. Bukics is a participant of the Medical Assistance program administered by the Department of Public Welfare (DPW). Pursuant to DPW regulations, Cedarbrook receives reimbursement from DPW for his health care expenses to the extent he does not have income available *to* pay them himself. *See* 55 Pa.Code § 181.453. Under DPW regulations, Mr. Bukics' available income does not include the portion of his income used for Appellant's maintenance needs. *See* 55 Pa.Code § 181.452(c)(2). Appellant's maintenance need amount is reduced by her own available income. *Id.*

In that month, Appellant received her social security check for $243 and a check from Cedarbrook for $355 of Mr. Bukics' $567 social security check. Appellant returned the Cedarbrook check.

On September 12, 1987, Appellant and Mr. Bukics presented the trial court with their agreement for an order of support and requested the trial court to order Mr. Bukics to pay Appellant $700 each month for support. The trial court issued the support order and ordered the attachment of Mr. Bukics' pension and social security benefits. Beginning in December, 1987, Appellant received $368.60 of Mr. Bukics' social security benefits [3] and $200 of his pension benefits each month.

On March 21, 1988, on behalf of Cedarbrook, the County filed a petition for modification of the support order, alleging that Appellant did not inform the trial court that Mr. Bukics receives health care services from Cedarbrook. The County also alleges that Appellant did not inform the trial court of his participation in the Medical Assistance program and the consequent restrictions under DPW regulations on the distribution of his social security and pension benefits. The trial court issued a rule upon Appellant to show cause why the support order should not be modified in accordance with the circumstances set forth in the petition.

An evidentiary hearing was held on April 20, 1988. The trial court treated the modification petition as a petition to intervene and found that the County had the right to intervene. The trial court concluded that, under the Medical Assistance program, "the County [is] entitled to the total resources of [Mr. Bukics] and in turn [is] obligated to remit to [Appellant] that amount as computed pursuant to the formula" within the DPW regulations. The trial court vacated its prior order of support and set aside the attachments.

3. Social security benefits cannot be attached in an amount which exceeds 65% of the monthly amount. *See* 15 U.S.C. § 1673 and 29 U.S.C. § 1056.

In her appeal to this court Appellant raises three issues: (1) whether the County was properly allowed to intervene; (2) whether a spouse's right to support conflicts with and takes precedence over DPW regulations; and (3) whether the DPW regulation providing for the maintenance of a medical assistance participant's spouse are applicable to Appellant.

As to the first issue, the trial court stated that "[n]either party has made an issue as to the [County's] right to intervene and neither will this court." [4] Appellant argues that she raised this issue at the hearing, citing the following portion of the transcript:

[Appellant's counsel (AC)]: My position, your Honor, is the county has no standing.

THE COURT: Well, that was one of my thoughts on this.

(AC): Okay. My feeling is that the county stands in the position of any creditor, and they get behind his obligation to his wife.

. . . . .

THE COURT: Okay. Do you have any law whether they have any standing?

(AC): Your Honor, the problem is this is a case of first impression.

THE COURT: Well, its not a case of first impression as to whether a party has standing. . . .

(AC): Well, on the—I'm talking about the circumstances a[s] set forth in this case.

THE COURT: Okay.

Hearing Transcript, at 3. Appellant arguably raised the issue of standing or the County's right to intervene; however, Appellant's counsel made the same argument at the end of the hearing and was told to submit law and memorandum to support his position:

(AC): [The County is] a creditor. That's the bottom line. They're no different than if he had a Sears charge ac-

4. *Bukics v. Bukics and County of Lehigh,* 49 Pa.D. & C.3d 333, 335 (1988).

count. Under the law Mr. Bukics' first obligation is to his wife....

THE COURT: All right. Give me law.... Submit law. Submit memorandums [sic].

*Id.* at 74–75. Appellant did not submit law or a memorandum to support her objection. Appellant elected not to pursue the issue before the trial court. The issue has not been preserved for our review.[5]

As to the second issue, the broad discretion of a trial court in support matters has been established by the appellate courts of this Commonwealth. Appellate review of support orders is defined very narrowly, and we will not interfere with the trial court's determination, absent a very clear abuse of discretion. *Commonwealth v. Goodyear*, 270 Pa.Superior Ct. 326, 411 A.2d 550 (1979). The exercise of that discretion in the current context, however, is one of first impression.

Appellant argues that the trial court should order an amount of support based on Mr. Bukics' financial capacity to pay support and that the support order should be crafted to maintain Appellant on the economic plateau attained by the parties during their marriage.[6] These principles do not support Appellant's argument.

**5.** The County argues that they are proper intervenors under Pa.R.C.P. No. 2327, which provides in pertinent part:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene, subject to these rules if
....
(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

At the time the County sought intervention, the County was not receiving reimbursement from Mr. Bukics for his health care expenses because of the support order and the attachments. This reimbursement was a condition of Mr. Bukics' residence at the County home. Had the issue of right to intervene been preserved, we would have concluded that the County had a legally enforceable interest affected by the support action.

**6.** Appellant cites *Bulson v. Bulson*, 278 Pa.Superior Ct. 6, 419 A.2d 1327 (1980) and *Commonwealth v. Goodyear*. The rarity of political subdivisions becoming parties to actions for support explains the lack

We cannot ignore that Mr. Bukics' health requires expensive nursing home care. The cost of this health care exceeds Mr. Bukics' income. It is the settled law of this Commonwealth that a support order must make due allowance for the reasonable living expenses of the payee. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975); *Commonwealth v. Vogelsong*, 311 Pa.Superior Ct. 507, 457 A.2d 1297 (1983). Mr. Bukics' financial capacity, which Appellant argues must be the basis of the support order, must take Mr. Bukics' health care expenses into account. However, no allowance was made for these expenses in the original support order. We hold that the trial court did not abuse its discretion by terminating a support order which was entered without a complete record as to Mr. Bukics' true financial capacity to pay support.

As to the third issue, Appellant argues that she is not subject to the DPW regulation which divides the amount of Mr. Bukics' income available for his health care expenses and the amount available for Appellant's support. The construction of this regulation is irrelevant to the issue of modifying the support order.

The portion of Mr. Bukics' income which is set aside for Appellant's support under the DPW regulations, does not alter the fact that the original support order was entered without considering Mr. Bukics' fundamental health care expenses. The trial court was informed of the true financial capacity of Mr. Bukics and vacated its prior support order. This was well within its discretionary power.

Accordingly, we affirm.

## · ORDER

AND NOW, February 20, 1990, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is affirmed.

of prior case law from this court with respect to the subject matter of this appeal.